UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANGEL WILSON,

Plaintiff,

vs.

MCLAREN HEALTH CARE CORPORATION,
a Michigan non-profit corporation,

Defendant.

Case No.
Hon.

Jyarland Q. Daniels (P84774)
Brian J. Farrar (P79404)
STERLING ATTORNEYS AT LAW, P.C.
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Ste. 250
Bloomfield Hills, Michigan 48304
(248) 644-1500
jdaniels@sterlingattorneys.com
bfarrar@sterlingattorneys.com

## COMPLAINT AND JURY DEMAND

Plaintiff, Angel Wilson, by and through her attorneys Sterling Attorneys at Law, P.C., for her Complaint against Defendant, submits the following:

### JURISDICTION AND PARTIES

1. This is an action for violations of the Family and Medical Leave Act, 29 USC 2601 *et seq.* ("FMLA"), the American with Disabilities Act ("ADA"), 42 USC 12101 *et seq.,* and the Michigan Person with Disabilities Civil

Rights Act, MCL 37.1101 ("PWDCRA") *et seq.,* arising out of Plaintiff's employment with the Defendant.

2. Plaintiff Angel Wilson ("Plaintiff") is an individual residing in Belleville, Michigan, within the Eastern District of Michigan.

3. Defendant McLaren Health Care Corporation ("McLaren") is a Michigan nonprofit corporation that maintains its corporate headquarters and principal place of business in Grand Blanc, Michigan, located within the Eastern District of Michigan.

4. Defendant McLaren is a Michigan-based 501(c)3 non-profit that operates hospitals across the state.

5. Defendant is an employer as defined by the FMLA, ADA, and PWDCRA.

6. Plaintiff was an employee as defined by the FMLA, ADA, and PWDCRA.

7. This Court has subject matter jurisdiction over the Plaintiff's federal claims pursuant to 28 USC 1331, as those claims arise under the laws of the United States.

8. This Court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 USC 1367(a).

9. Venue is proper in this district under 28 USC 1391(b)(2) because a substantial part of the events giving rise to this claim occurred in this judicial district.

## BACKGROUND FACTS

10. On or about September 25, 2023, Defendant hired Plaintiff as a Patient Access Schedule Representative.

11. Plaintiff's job duties included assisting customers with the patient registration process.

12. Patient Access Schedule Representative is a remote position; Plaintiff and other individuals in the role work assigned shifts from their homes.

13. Defendant hired Plaintiff as a part of its Central Business Office ("CBO").

14. At all times, Plaintiff was a dedicated and capable employee who satisfactorily performed her job.

15. On or about January 14, 2024, Plaintiff was hospitalized for approximately three and a half weeks.

16. Prior to this hospitalization, on or around January 12, 2024, Plaintiff met with Department Head Emily Hein ("Hein"), Supervisor Diana Kuzdak ("Kuzdak"), and Supervisor Elizabeth Tsopels ("Tsopels") via MS Teams regarding her medical condition.

17. On January 12, 2024, Plaintiff told Hein, Kuzdak, and Tsopels that she suffered from a mental health disorder that may on occasion require hospitalization.

18. During the January 12, 2024, meeting, Plaintiff requested any one of three potential ADA accommodations.

19. These ADA accommodations included: the ability to work on-site vs. remote, the ability to work a later shift, or the ability to take short breaks during the workday.

20. Plaintiff requested to work on-site because her mental health condition is better managed when working around other people versus working in isolation.

21. Patient Access Schedule Representatives are given a one-hour lunch break.

22. Plaintiff's accommodation request regarding breaks would result in her taking 30 minutes for lunch and using the remaining 30 minutes for short breaks during the day.

23. Defendant denied all accommodation requests from Plaintiff.

24. Defendant denied Plaintiff's request to work on-site because, the "position was fully remote."

25. From September 2023 – April 2024, Plaintiff received no disciplinary action for tardies.

26. Prior to May 2024, Elizabeth Tsople, Plaintiff's direct supervisor, did not enforce the policy regarding tardies due to Plaintiff's disability.

27. Tsople was aware that her superiors (including Hein) had not approved Plaintiff's request for an ADA accommodation.

28. After Plaintiff's January 2024 hospitalization, Tsople told Plaintiff, she was "fighting for her behind closed doors."

29. Plaintiff understood this to explain Tsople's leniency in enforcing the CBO's Attendance and Punctuality Policy HR 100.

30. Despite the support from Tsople, in or around May 2024, Defendant began tracking Plaintiff's tardies and implementing its progressive disciplinary policy.

31. Defendant began tracking Plaintiff's tardies after a prior hospitalization and learning of her disability.

32. On or around May 9, 2024, Defendant began to use disciplinary actions in place of accommodations.

33. On or around May 9, 2024, Plaintiff was given a Step 1 written warning for unapproved tardies.

34. On or around June 7, 2024, Plaintiff was given a Step 2 written warning for unapproved tardies.

35. The tardies documented in June 2024, included tardies from October 2023 – June 2024.

36. On or around June 10, 2024, Defendant required Plaintiff to work in-person, effective June 13, 2024, as punishment for tardies and part of its corrective action program.

37. This is the same request that the Defendant had previously refused to grant to Plaintiff when it was requested in January 2024 as an ADA accommodation because the position was "fully remote."

38. From June 2024 – August 2024, corrective action implemented by Defendant required Plaintiff to drive from Belleville, MI to Sterling Heights, MI to work in-person.

39. Defendant refused to provide Plaintiff with an end-date of the in-person requirement or what demonstratable behaviors would constitute the end of the corrective action.

40. During the period of the on-site requirement, Plaintiff was written up for tardies on June 20 and 25, 2024, resulting in a Step 3 Suspension corrective action.

41. Plaintiff relayed to Tsoples that reporting on-site, driving from Belleville to Sterling Heights, for an undetermined period was "becoming too much mentally."

42. Defendant repeatedly denied Plaintiff's request to resume remote work.

43. In or around June 2024, Plaintiff renewed her request for ADA accommodations that would allow her to start and end her shift later or take breaks during the day instead of the full hour lunch break.

44. Defendant, once again, denied all Plaintiff's ADA accommodation requests.

45. On or around August 5, 2024, Defendant experienced an enterprise-wide criminal cyber-attack.

46. Plaintiff was only permitted to return to remote work in or around the end of August 2024, after the resolution of the cyber-attack.

47. Plaintiff's remote-work status was not restored based on the Plaintiff's adherence to any policy.

48. Plaintiff was re-hospitalized from September 4 – 14, 2024.

49. Prior to this re-hospitalization, Plaintiff notified management she needed go to the hospital due to her disability.

50. Management instructed Plaintiff to clock-out and end her shift.

51. Plaintiff requested FMLA from September 5, 2024 – October 19, 2024.

52. The FMLA requested in September 2024 was approved through October 19, 2024.

53. While Plaintiff was hospitalized, in or around September 2024, the department reporting structure changed.

54. In or around September 2024, Tsopels resigned and was no longer Plaintiff's direct supervisor

55. All of Tsopels' direct reports were assigned to her replacement, except for Plaintiff.

56. Plaintiff was the only of Tsopels former direct reports who was required to report to Department Head Emily Hein.

57. While on FMLA leave, on or around October 10, 2024, Plaintiff received multiple communications from Emily Hein and/or Kay Hoffell (HR) stating her job was in jeopardy.

58. Plaintiff remained on FMLA leave from October 10 – 14, 2024.

59. Plaintiff returned to work on or around October 14, 2024, based on pressure from Kay Hoffell in Human Resources.

60. On or around October 10, 2024, Plaintiff provided a return-to-work letter from her medical provider to Kay Hoffell, Diane Kuzdak, and Emily Hein.

61. On or around October 14, 2024, Plaintiff's received notification from Lincoln Financial Group (LFG) that her FMLA period had ended due to her return to work.

62. The end to Plaintiff's FMLA leave was premature and only due to pressure to return to work from management.

63. On or around October 16, 2024, Plaintiff experienced connectivity issues while working remotely.

64. Plaintiff informed Hein of the issue and was instructed to clock-out prior to her shift ending on October 16, 2024.

65. On October 17, 2024, Plaintiff attempted to return to work by logging-in.

66. Defendant would not allow Plaintiff to work, stating the October 10 return-to-work letter was insufficient and another would have to be provided.

67. This was despite Defendant having previously pressured Plaintiff to return to work on October 14, 2024 and having accepted the prior letter.

68. On or around October 21, 2024, Plaintiff provided additional documentation from her medical provider to HR allowing her to return to work on October 22, 2024.

69. Plaintiff was instructed by HR to provide the new return-to-work letter to Lincoln Financial.

70. Plaintiff did not receive pay or FMLA benefits between October 17-22. 2024.

71. Upon her full return to work after October 22, Plaintiff observed she was monitored more frequently via her work computer.

72. Plaintiff shared her observation about heavy monitoring with Hein who told Plaintiff that supervisors were "watching her performance more closely."

73. On or around November 21, 2024, Plaintiff requested intermittent FMLA through November 2025.

74. On November 21, 2024, Plaintiff received documentation from McLaren's third-party provider, Lincoln Financial Group (LFG), that she must provide provider certification within 15 days.

75. Plaintiff contacted her healthcare provider to provide certification.

76. Plaintiff also shared her provider's information (email, fax, phone) with Lincoln Financial Group (LFG).

77. On December 6, 2024, Plaintiff received notification from LFG that her request for FMLA was denied.

78. The December 2024 FMLA denial was for failure to turn in paperwork.

79. Plaintiff made good-faith efforts to meet the deadline, including communicating with her healthcare provider regarding the certification.

80. Plaintiff was not given additional time to cure prior to denying FMLA leave.

81. In December 2024, Plaintiff received a positive performance review from manager, Emily Hein.

82. During the performance review, Hein stated Plaintiff was "patient with callers" and performed "exceptionally well."

83. Defendant made no reference to attendance or tardy concerns during this evaluation.

84. In late December 2024 Plaintiff re-applied for intermittent FMLA.

85. Before Plaintiff's FMLA could be approved, on January 6, 2025, Plaintiff was abruptly terminated for purportedly for violating the CBO's Attendance and Punctuality Policy HR 1010.

## CAUSES OF ACTION

### COUNT I
***Family and Medical Leave Act Violations***

86. Plaintiff incorporates the preceding paragraphs by reference.

87. Plaintiff was an employee and Defendant is an employer as defined in the Family and Medical leave Act (FMLA), 29 USC 2611(2), (4).

88. At all relevant times, Defendant knew Plaintiff was exercising her rights under the FMLA.

89. Defendant willfully violated the FMLA by interfering with Plaintiff's attempt to take FMLA leave and/or retaliating against Plaintiff for exercising her rights under the FMLA.

90. Defendant's conduct denied Plaintiff the opportunity for continued employment and adversely affected her compensation, terms, conditions, and privileges of employment in violation of the FMLA.

91. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer the following injuries:

a) loss of employment;
b) loss of compensation;
c) loss of the value of fringe benefits;
d) loss of earning potential; and
e) other incidental and consequential damages, including attorney fees.

**COUNT II**

***Discrimination under the American with Disabilities Act***

92. Plaintiff incorporates the preceding paragraphs by reference.

93. Plaintiff is a qualified individual with a disability as defined by the American with Disabilities Act 42 USC 12111(8) and 12112 (a).

94. At all relevant times, Plaintiff was able to perform the essential functions of her position, and her medical condition did not prevent her from doing so.

95. Plaintiff requested reasonable accommodations on at least two occasions.

96. Plaintiff requested for ADA accommodations verbally and in writing.

97. Defendant failed to provide a reasonable accommodation.

98. Defendant failed to engage in the interactive process as required under the ADA.

99. Defendant used punitive measures in lieu of a reasonable accommodation.

100. Defendant discriminated against Plaintiff because of her disability.

101. Defendant subjected Plaintiff to adverse employment actions, including terminating her employment.

## COUNT III
### *Disability Discrimination under the Michigan PWDCRA*

102. Plaintiff incorporates the preceding paragraphs by reference.

103. Plaintiff is a person with a disability as defined by the Michigan Persons with Disabilities Civil Rights Act, MCL 37.1101 *et seq.*

104. Plaintiff also has a record of a disability and was regarded as having a disability as defined by and within the meaning of Michigan's Persons with Disabilities Civil Rights Act, MCL 37.1101, *et seq.*

105. Defendant knew or had reason to know of Plaintiff's disability.

106. At all times, Plaintiff was qualified for her position.

107. At all relevant times, Plaintiff was able to perform the essential functions of her position, and her medical condition did not prevent her from doing so.

108. Defendant was predisposed to discriminate on the basis of Plaintiff's disability and acted in accordance with that predisposition.

109. Defendant discriminated against Plaintiff with respect to the terms, conditions, and privileges of her employment because of Plaintiff's disability, record of a disability, and/or because they regarded her as disabled.

110. Defendant treated similarly situated non-disabled employees more favorably than Plaintiff.

111. Defendant failed to accommodate Plaintiff and terminated her on the basis of her disability.

## RELIEF REQUESTED

For all the foregoing reasons, Plaintiff Angel Wilson demands a judgment against Defendant as follows:

**A. Legal Relief:**

1. Compensatory damages in whatever amount she is found to be entitled;

2. Exemplary damages in whatever amount she is found to be entitled;

3. Liquidated damages in whatever amount she is found to be entitled;

4. A judgment for lost wages and benefits in whatever amount she is found to be entitled;

5. An award of interest, costs and reasonable attorney fees; and

6. Whatever other legal relief appears appropriate at the tie of final judgment.

**B. Equitable Relief:**

1. An injunction out of this Court prohibiting any further acts of wrong-doing;

2. An award of interests, costs and reasonable attorney fees; and

3. Whatever other equitable relief appears appropriate at the time of final judgment.

**JURY DEMAND**

Plaintiff Angel Wilson, by her attorneys Sterling Attorneys at Law, P.C., requests a trial by jury.

Respectfully submitted

STERLING ATTORNEYS AT LAW, P.C.

By: /s/Jyarland Q. Daniels
Jyarland Q. Daniels (P84774)
Brian J. Farrar (P79404)
Attorneys for Plaintiff
33 Bloomfield Hills Pkwy., Ste. 250
Bloomfield Hills, MI 48304
(248) 644-1500
jdaniels@sterlingattorneys.com
bfarrar@sterlingattorneys.com

Dated: July 6, 2026